## Richmond,

### SUTHERLIN v. MARCH, PRICE & CO.

#### January 27.

Upon bill by M against P and S, to subject certain real estate which had been conveyed by P to S to pay a debt due from P to M—HELD : Upon the evidence that the conveyance was not a mortgage, but an absolute conveyance ; that the price paid by S to P for the property was not so inadequate as to indicate fraud, and that the transaction was *bona fide*.

This was a suit in equity in the circuit court of the city of Danville, brought in June, 1872, by March, Price & Co., commission merchants of New York, against Thomas Patrick and Wm. T. Sutherlin, of Danville, to compel the payment by Sutherlin of a balance of $7,707.04, found due to them on settlement with said Patrick in March, 1871, and to subject certain real estate and personal property which had been conveyed by Patrick to Sutherlin by deed bearing date the 20th of January, 1870, to satisfy their claims. The cause came on to be heard on the 4th of December, 1875, when the court made a decree directing a part of the said real estate to be sold for the payment of the claim; and Sutherlin thereupon applied to this court for an appeal and *supersedeas* ; which was awarded. The case is stated by Judge *Anderson* in his opinion.

*E. E. Bouldin, J. Alfred Jones* and *F. L. Smith,* for the appellant.

*H. Robertson* and *Ould & Carrington,* for the appellees.

ANDERSON, J., delivered the opinion of the court.

The bill in this case was brought by March, Price & Co., commission merchants of New York, against Thomas J. Patrick and Wm. T. Sutherland, residents of the town of Danville, in Virginia, to recover the balance due them of $7,707.04—evidenced by three notes of T. J. Patrick, one for $3,353.52, at four months, another for same amount at six months, and the other for $1,000 at five months—all bearing date 27th March, 1871, for the payment of which they allege that the said Wm. T. Sutherlin is liable.

They also allege that a deed executed by Patrick to Sutherlin, bearing date January 20th, 1870, and acknowledged, and admitted to record on the 25th, conveying a large amount of property, real and personal, to Sutherlin, in consideration of $6,000 paid by him for said Patrick to the United States government, constituted all the visible property of which said Patrick was then possessed, as far as known to them, except the residue of tobacco in their hands. And they charge that the said deed of conveyance "although absolute cn its face, was really only a deed of trust and mortgage, or security to the said Sutherlin for the sum of $6,000, so paid by him, and that the property, real and personal, specified in said deed, after the said Sutherlin shall have received back his $6,000 and interest for the money so advanced, and paid by him, is liable to your orators and other creditors of said Patrick."

They further "charge that beyond the object of securing and indemnifying said Sutherlin as to the $6,000 aforesaid, the said deed was intended to delay, hinder and defraud your orators, and other creditors of said Patrick." And they allege that the property, real and personal, "at the date of the deed, and still, is worth far more than the said sum of $6,000, and more than double that sum."

And they pray that the said deed be treated and declared to be only a mortgage security or pledge, to indemnify the said Sutherlin against loss by his payment of the $6,000, and

Sutherlin v. March, Price & Co.

beyond that to be declared null and void as against your orators, and that the property remaining in the possession of Sutherlin and Patrick, or either of them, be sold (if need be) and the proceeds, after the said sum of $6,000 and interest shall have been repaid to said Sutherlin, be applied to the payment of your orators' debt; and for further and general relief.

The prayer of the amended bill, among other things, is for a decree against Sutherlin for the debt due the plaintiffs from Patrick as principal, and that the said deed of 20th of January, 1871, may be declared as to the plaintiffs null and void; or if valid to any extent, valid only as a security to Sutherlin for the repayment of the $6,000 paid by him for the said Patrick to the United States government, and the interest thereon; and that the dwelling-house and lot and the factory lot and building be sold, if necessary, in order to pay the debt aforesaid of plaintiffs.

The court is opinion upon a careful consideration of the pleadings, evidence and exbibits in the record that the several notes of Patrick to the plaintiffs, which were endorsed by Sutherlin for the accommodation of the maker, not having been protested, and having been paid and taken up by the payees, not by the request or at the instance of the endorser, and without any waiver of his right to protest and notice thereof, which were necessary to fix the liability of the endorser, the said Sutherlin is under no liability to the plaintiffs for the amount of said notes or either of them, or any part thereof, and there is no error in the decree of the circuit court denying the prayer of the plaintiffs in that behalf. And the court will proceed to consider the other allegations and prayers of the plaintiffs' bill.

A little more than a year after the last notes endorsed by Sutherlin were returned to Patrick, he made a deed conveying all of his interest in certain real and personal property to Sutherland for the consideration of six thousand

and fifteen dollars. The government of the United States had a claim against Patrick for $10,735.51, due the 1st of November, 1869; and under a warrant issued by the internal revenue collector, made a levy upon a large amount of real and personal property, which probably embraced all the property in which Patrick had an interest. The government debt constituted a lien on all the property, whether real or personal, which Patrick owned.

It was represented to the government officer that the entire interest of Patrick in the property levied on would fall far short of the government's debt, at a forced sale for cash, and would leave him still incumbered with a large debt due the government as a preferred creditor, which would be a source of embarrassment to him as long as he lived, and paralyzing to his future exertions. He sought therefore to obtain a compromise with the government and a reduction of the debt to an amount which his property would be sufficient to satisfy. The result of his efforts was that the government agreed that if he would pay $6,000 in cash, to accept of that sum in full discharge of its entire claim against him for $10,735.51 and interest.

But how was he to raise $6,000? The property levied on, if a good title could be made to it, is proved to have been ample security for a loan of $6,000. But it is also proved that it would not have been in the power of Patrick in his then circumstances, having been in a difficulty with the United States government, to have effected a loan of $6,000 from any of the money-lenders at Danville upon that security. But if that difficulty could have been overcome, there was a large portion of the property levied on to which he could not have made a good title. He therefore turned to his friend Sutherlin and laid his case before him, and he agreed to take his interest in the property levied on and pay for it in cash $6,000, the amount which the government had agreed to receive in full satisfaction of its entire claim

upon him, and which the government officers, who had the matter under investigation, concluded his interest in the property would not bring, at a forced sale for cash. But Patrick would not consent to make the conveyance to Sutherlin until he had advised the plaintiffs of the offer. He wrote to them on the 13th of January, 1870, received their reply dated the 17th of January, and made a deed of conveyance to Sutherlin dated the 20th, but not acknowledged and recorded until the 25th of the same month. If the price proposed to be paid by Sutherlin for Patrick's interest in the property was so disproportioned to its value as they now claim, it is strange that they did not offer for it a higher price than Sutherlin was willing to give, when they had an opportunity given them.

The allegation of the bill that the deed of 20th of January, 1870, though absolute on its face, is really a mortgage, or deed of trust, or security for the money paid by Sutherlin to the United States government for Patrick, is positively denied by the answers of both Sutherlin and Patrick, and there is no proof in the record sufficient to overcome the denial of the answers. There is no evidence that there was any proposition or treaty for a loan. The offer was made by Sutherlin to purchase Patrick's interest in the property, and to pay his debt to the government for an absolute and perfect title, which is shown by the uncontradicted testimony of Sutherlin, confirmed by the cotemporaneous evidence of Patrick's letter to the plaintiffs of the 13th of January, 1870, introduced by the plaintiffs in evidence. We think it is conclusively shown by the record that the said deed of conveyance, whatever may have been the motive, was a sale and purchase, and not a pledge or security for a loan.

But the bill charges that the said deed was made to hinder, delay and defraud the plaintiffs and the other creditors of the grantor. Both answers positively deny this allega-

tion, and aver, in substance, that the deed was a *bona fide* absolute conveyance to Sutherlin of all the interest of the grantor in the property conveyed, for a full and valuable consideration, as it purports on its face to be.

The able and learned counsel for plaintiffs argue to show, that the said conveyance was fraudulent upon several grounds. The one mainly relied on, and most earnestly pressed, is the disproportion in the value of the property conveyed and the consideration paid for it. They insist with great force of reason, that whilst mere inadequacy of price may not be sufficient ground, as between the grantor and the grantee, for setting aside a conveyance, it may be where the question is between the grantor and the grantee on the one side, and the creditors of the grantor on the other. All of a creditor's property is bound for his debts, and he has no right to give it away, or to convey or assign it to another, even for a valuable consideration, at a price palpably and grossly less than its value, to the prejudice of his creditors—especially when the sale is of all his property, and is at a price which deprives the creditor of the means of obtaining satisfaction of his debt, and is the occasion of its total loss, when if the property had sold for its fair and reasonable value, the proceeds of the sale would have been sufficient, as they contend they would have been in this case, over and above the price paid by the purchaser, as the consideration of the conveyance, to have satisfied the creditor's debt. And they insist that a sale and conveyance made by a debtor of all his property, at a price so inadequate, and which is so manifestly to the great prejudice of his creditors, is conclusive evidence of an intention to hinder, delay and defraud his creditors; and that the purchaser being fully apprised of the facts, as they allege that Sutherlin was in this case, is a participant in the fraud.

We do not agree with the learned counsel that it is conclusive evidence of an intention to hinder, delay and de-

fraud the creditors of the grantor, but are of opinion that whilst it may be indicative of a fraudulent intent—that is, of actual fraud—that may be rebutted by proof of facts and circumstances tending to show that there was no such fraudulent intention. But whilst there may be no actual fraud, it is difficult to resist the conclusion that, on principles of equity and natural justice, the purchaser, when there was a gross and palpable excess in the value of the property at the time of his purchase, over and above the price he paid for it, should be deemed to hold it subject to the amount he paid for it, in trust for the benefit of the creditors of his grantor. And this would seem to be a necessary corollary of the doctrine that all of a debtor's property is bound for the satisfaction of his debts. But the inadequacy of the price paid for it must be gross and palpable; and that is the question, which we will now proceed to consider.

Prior to the compromise made by the United States government with Patrick, an appraisement had been made of the property levied on, all of Patrick's interest in which was afterwards conveyed to Sutherlin by William T. Clark, John F. Ficklin and W. N. Shelton, well known citizens of Danville, of intelligence, integrity, sound practical judgment and business qualifications, who certify that they were called on by J. W. McKinzey, deputy collector for the Danville district, to make the valuation. Their apprisement and valuation of the property was at $14,773.83. And they say that said appraisement, in their opinion, "is far above what the same would bring at government sale, or at any forced sale at auction, for cash." It seems that their appraisement was returned to the treasury department at Washington, and a copy thereof, certified by the secretary of the treasury, is filed with the record in this cause.

But the plaintiffs object to the said appraisement being considered as evidence. We think it was competent for the

defendants to prove, that there was an appraisement made of the property, shortly before the sale and conveyance of all of Patrick's interest in the same to Sutherlin, between the United States government and Patrick, by disinterested and competent appraisers, called upon by the United States officer, who had authority to act on behalf of the government, and that in the sale and conveyance by Patrick of his interest in the same property to Sutherlin, they put the same value upon it that was put upon it by the said appraisement. And such evidence being cotemporaneous, and the appraisement *bona fide*, we think was not only admissible, but entitled to great weight upon the questions at issue in this cause.

The appraisement is of the entire property embraced in the conveyance to Sutherlin, and is appraised as the unincumbered property of Patrick. But it was not *all* his property, or unincumbered.

But it is contended by plaintiffs' counsel that the defendants are estopped by the deed—conveying the property as the property of Patrick—to deny that any portion of it was incumbered, or was not the property of Patrick. The deed only conveys to Sutherlin "all his (Patrick's) right, title and interest in and to all the property, real and personal," therein before mentioned. It does not describe what his interest is; but it is not such an assertion by the grantor of an unqualified and unincumbered right to the whole of the property conveyed and acknowledgement by the grantor, as would estop them from now showing what the grantor's interest was which was really conveyed.

The defendants aver in their answers, and Sutherlin testifies in his deposition, that Patrick had only an equitable title to the tobacco factory, which was appraised at $7,000; that Sutherlin was the owner of the lot upon which it was built, and sold it to Patrick for $4,000; that he had paid no part of it; that he had never conveyed the title to him, and

that he held the vendor's lien upon the lot and the improvements on it for $4,000, the purchase money, and the interest on it, amounting at the date of said conveyance to $750; and that Patrick had only an equitable title to the factory, subject to his said lien for the purchase money of the lot, which equitable title was subject to Mrs. Patrick's contingent right of dower, and that she also had a contingent right of dower in the dwelling house and lot, which they estimated to be worth $500. Also, that the factory fixtures belonged to Sutherlin by purchase from Patrick, subject to a balance, which he would have to account with Patrick for. That he had to pay, as security for Patrick, an execution of one Ragland against him for $900 or more, being bound as security for him in a delivery bond; which is shown by a certified copy of the execution filed in the cause. And that to satisfy him for the payment he had made for him as aforesaid, Patrick sold him the said fixtures some months before the said deed was executed, reserving the privilege of retaining them for the remainder of the year for $1,950, which was credited with the amount he had paid on the execution aforesaid, and for the balance he was to account for with the said Patrick; and that upon settlement of their accounts Patrick would be owing him largely more than said balance. Also, that Sutherlin was the owner of a lot of ground which was included in the inclosure of Patrick's dwelling house, which was not excepted from the levy or appraisement, and which was worth one thousand dollars. Subject to these deductions, the interest of Patrick in the property conveyed exceeded very little in value, if at all, the price—$6,015—which Sutherlin paid for it, according to the said appraisement. These deductions are not only alleged by the answers of both defendants, but they are testified to by Sutherlin, who is made a competent witness by the law, and his testimony is uncontradicted. If contested by the plaintiffs, they might

have asked for an account to ascertain what Patrick's interest was in the property conveyed, which might have been ordered by the court of its own motion, if it was not satisfied upon the proof before it.

If the price paid by Sutherlin for Patrick's interest in the property conveyed to him was its reasonable value, it repels the imputation of a fraudulent intent to hinder or delay the plaintiffs or other creditors of Patrick in the recovery of their debts; for he undoubtedly paid the stipulated price.

Sutherlin swears, in answer to a question propounded to him on his examination as a witness, that "there was no agreement or understanding of any kind whatever, at any time, either written or verbal, between Patrick and myself that he was to have any right, title or use of the property whatever. There was no agreement or understanding of any kind whatever, at any time, between him and myself, that he was to have the right to recover the property, or any part thereof, upon the payment to me of any sum of money, or any other way. There was no agreement or understanding at any time between him and myself that he was to have the use of the property, or exercise any control over the same. The purchase made by me of Patrick of the property was made in good faith; and I would not have made it in any other way. I considered at the time that I paid the full value of the property, and I never made a purchase of property more openly, fairly and above board, nor one that I considered myself legally and morally more justly entitled to the benefits of."

It appears that Sutherlin was bound as security for Patrick to Hodges, at the time of said purchase, for about $5,000, and paid $2,500 of it since he made the purchase, and is still bound for the balance, and will have to pay it. Also, Patrick was owing him a large balance on account, at that time. He loaned him a large amount of the money,

he testifies, to erect the factory, which constitutes, to the best of his knowledge and belief, a considerable portion of the large debt now due him from Patrick. He must have been aware that Patrick was conveying to him all the property he owned. He testifies that he did not know of his owning any other property. And if he had not regarded the price he was paying for the property as equivalent to its value, why did he not add the security debt due Hodges, and the large balance due him on accounts, which he could not have entertained a hope of ever being able to make out of Patrick, to the price he was to pay for his interest in the property, and thus have swelled the expressed consideration from $6,015 to twelve or fourteen thousand dollars? Regarding the appraisement as a fair valuation of the property at the time he agreed to pay for Patrick's interest in it, the amount which the government agreed to take from him upon that basis, and release the balance of its claim against him, it is evident that it was his intention to take the property at the price at which it had been valued by disinterested and competent appraisers between Patrick and the United States government. And that he regarded it candidly as the par value of Patrick's interest in the property, is shown by the facts just stated, and as he solemnly testifies on his examination as a witness. He might have put it at twelve or fourteen thousand dollars and would have had no more money to pay than he actually paid, and it really would have cost him no more.

But the plaintiffs offered testimony to prove that portions of the property were worth largely more than their appraised value. One of their witnesses, T. J. Talbott, puts a much higher value upon the factory and the dwelling house and lot than the appraisers did. William T. Clarke, one of the appraisers, who was examined as a witness by the plaintiffs, does not. In answer to a question of plaintiffs, what would the tobacco factory and lot have been

worth, as an investment to a man of wealth, on or about the
20th of January, 1870, without the fixtures ? said, "If pur-
chased for cash I do not think it would be worth but little
more than we valued it at.   If it had been sold on reason-
able time, it would probably have brought $1,000 or $1,500
more."  Upon cross-examinasion as to the value of the
entire property appraised, he did not think it would have
brought more at that time, if sold by the government, and
he was not aware of any change in the value of property in
Danville between the 14th of July, 1869, when this property
was appraised, and the 20th of January, 1870, when Pat-
rick's interest in it was sold to Sutherlin.   But subsequent
to the latter date he proves, in harmony with all the testi-
mony on the subject, that there was an advance in the
value of property there every year, sufficient perhaps to
account for the sale which Sutherlin made of some of the
property at an enhanced price, and the additional price
which he sought to obtain for other articles of the property
he bought.   It may have been caused by the general revival
of business, and specially by the impulse which had been
given to the growth and prosperity of Danville.   It is also
a matter of common observation that men are inclined to
put a higher value on property they have for sale than they
do on property they want to purchase ; and that the same
article of property in the hands of one of means, who is
able to hold it and not obliged to sell, will command a
much higher price than when it is held by one who is in
failing circumstances, and who is not able to keep it, but
is obliged to sell.   And the cost of buildings in their erec-
tion, can throw but little light upon the question of their
value when offered for sale in open market.

The plaintiffs also relied upon the testimony of A. B.
Chambers to prove the undervaluation of the appraisers.
Upon his examination in chief he valued the factory and
the dwelling house much higher than they were valued by

the appraisers. When pressed, upon cross-examination, he said, "I think their valuation (the appraisers') was about right at a forced sale." He also testified that in valuing the factory at $10,000 or $12,000, upon his examination in chief, he did not mean if sold for cash at public auction, at government or forced sale.

T. J. Talbott is the only witness who testifies that the appraisers valued the property too low, sold for cash at government or forced sale; and he testifies, as other witnesses do, and there is not a particle of testimony to the contrary, that the appraisers were men of good judgment in business matters, and men of integrity, though he said "there was but one of them competent to judge some of the property." On being pressed for an explanation, he said, "Shelton was the best judge of the fixtures." And yet he, the witness, had valued them lower than the appraisers. It appears that this witness was unfriendly with both Patrick and Sutherlin, with the latter of whom he was not on speaking terms.

The appraisers were selected by Patrick and the government agent to put a cash value upon the property, and their appraisement was at its cash value. But they added, that if subjected to a forced sale they believed the price it would bring would be far below their appraisement. Yet, the government's proposition to take $6,000, it is evident, was made on the basis of their appraisement, although it might not bring that upon a forced sale, as the appraisers believed. The court is of opinion that the evidence offered to assail the valuation made of the property by the appraisers, selected by Dr. Patrick and the government agent, at a cash sale, who had first lien upon the whole of Patrick's interest in it, which was the basis of the price agreed on by Patrick and Sutherlin, in the sale of the former's interest to the latter, is insufficient to impeach that appraisement, or to show that the price paid by Sutherlin for the property was

grossly inadequate at the time of the sale and conveyance to him, although there has been a great advance in the value of the property since. We need not, therefore, spend much time in considering the other circumstances relied upon by the plaintiffs as *indicia* of fraud.

First. That Patrick, the grantor, remained in possession after the sale of the dwelling house and some of the personal property. It is now well settled that the grantor remaining in possession is not *per se* fraudulent. The deed of conveyance was admitted to record the same day, and any *prima facie* presumption of fraud from the fact that the grantor or his wife was permitted to remain in possession of the furniture or other personal property, we think, is explained and rebutted by the testimony. *Davis* v. *Turner*, 4 Gratt. 422; *Hutchinson* v. *Kelly*, 1 Rob. Rep. 123; *Bank of Alexandria* v. *Patton*, Idem, 499; *Herring* v. *Wickham*, 29 Gratt. ——; *Chamberlayne* v. *Temple*, 2 Rand. 399; *Davis* v. *Payne*, 4 Rand. 332—cited by counsel for appellant.

Second. That some of the property conveyed to Sutherlin was afterwards sold, or offered to be sold, by Patrick. We think the fact is not shown by the record. The carriage and harness, and the furniture, valued at $150, were not included in the conveyance to Sutherlin. Nor does it appear that any of the articles afterwards sold by Patrick were embraced in his conveyance to Sutherlin.

To ascertain the value of Patrick's interest in the property appraised, and which was afterwards sold and conveyed to Sutherlin, the lot of ground belonging to Sutherlin, and which was included in the inclosure of the dwelling house, was deducted from the sum of the appraisement at the estimated value of $1,000, upon the assumption that it was appraised with the dwelling house and its grounds. But Mr. Clark testifies that it was not included in the valuation. If Mr. Clark is not mistaken (for several years had elapsed since he assisted in making the appraisement and

Sutherlin v. March, Price & Co.

he had not seen it since), then it is evident that Dr. Patrick and the government agents, as well as Sutherlin, were mistaken, for all of them seem to have understood that said lot of Sutherlin was included in the appraisement. And it having been so understood and conceded by Patrick and the government, and their settlement having been made upon that understanding, and Sutherlin's purchase having been made on the basis of that settlement, it can raise no presumption of *mala fides* against Patrick or Sutherlin. The appraisement was of the property which was levied upon by the United States government, a schedule of which was given, from which this lot was not excepted, and the appraisers having valued the property levied upon, as appears from the appraisement itself, it was a most natural conclusion that the said lot was included in the appraisement. If it was a mistake, it was not to the prejudice of the plaintiffs. If it could now be corrected, who would be entitled to the benefit of the correction—the government of the United States or the creditors of Patrick? Sutherlin was also a creditor to a much larger amount than the estimated value of said lot, and if there was an error it was evidently unintentional, and does not affect the *bona fides* of the transaction. The government of the United States not complaining and Patrick having actually received full consideration from Sutherlin, irrespective of the estimated value of the said lot of ground, the court is of opinion that the settlement with the government and the transaction through which it was effectuated, ought not now to be disturbed.

Our conclusion upon the whole case is, that the conveyance from Patrick to Sutherlin was an absolute sale, and is untainted with fraud, and was made *bona fide* for valuable consideration; and that the decree of the circuit court in holding that the property, or any portion of it, conveyed by said deed to Sutherlin, was liable for the plaintiffs' debt, and in decreeing against Sutherlin, instead of dismissing the plaintiffs' bill, is erroneous. The court is, therefore, of

opinion to reverse the decree and to dismiss the plaintiffs' bill with costs.

STAPLES, J., was of opinion Patrick and Sutherlin were not guilty of bad faith, but thought the property was worth more than was given for it by Sutherlin; but he would not dissent.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the deed of conveyance from Patrick to Sutherlin in the bill and proceedings mentioned is an absolute sale, and was not intended to be a mere security or mortgage; that it is untainted with fraud, and was made *bona fide* for a valuable consideration, not grossly disproportioned to the value of Patrick's interest in the property conveyed at the date of the sale; and that the decree of the circuit court, in holding that the property, or any portion of it, conveyed by said deed to Sutherlin, was liable for the debts of Patrick to the plaintiffs, and in decreeing against Sutherlin therefor, instead of dismissing the plaintiffs' bill, is erroneous. It is, therefore, ordered and decreed that the decree of the circuit court be reversed and annulled, and that the appellees, March, Price & Co., pay to the appellant his costs expended in the prosecution of his appeal here. And this court, now proceeding to enter such decree as the said circuit court ought to have rendered, it is ordered and decreed that the plaintiffs' bill be dismissed with costs.

Which is ordered to be certified to the said circuit court of the town of Danville.

DECREE REVERSED.