## Staunton.

## TEBBS ET AL. V. LEE ET ALS.

### October 12, 1882.

1. APPEALS.—To give the court of appeals jurisdiction of a cause, save in certain specified cases, the judgment or decree must amount to $500, principal and interest, at the date of the judgment or decree, except where the plaintiff's demand exceeds that amount, and *he* applies for the appeal. *Gage* v. *Crockett*, 27 Gratt. 735. Such deficient claim is not helped as respects such jurisdiction, because another party, having a separate and distinct claim, unites in the appeal. *Umbarger* v. *Watts*, 25 Gratt. 165.

2. POSTNUPTIAL SETTLEMENT—*Sale—Case at bar*.—L is insolvent, and there are liens on his real estate. P, father of L's wife, devised to her one undivided sixth part of "Mansfield" farm. L and wife convey said sixth to W, for $3,886, payable in certain stocks and bond, and W simultaneously conveyed said stocks, &c., and said sixth interest, to trustees, for the purpose of paying out of the proceeds of said stock, &c., the liens of judgments against L, on said sixth interest and to hold the residue "subject to any appointment which the wife of L may make in writing addressed to said trustees."

HELD :

This is not a settlement of the husband's life estate, as tenant by the curtesy, on his wife, but a sale by L and wife to W of her own land and of her husband's marital interest therein.

3. FRAUDULENT CONVEYANCE—*Inadequacy*.—To invalidate conveyance for fraud, the fraud must be proved by the alleger thereof; and mere inadequacy of consideration, in the absence of fraud, will not invalidate a conveyance.

4. JUDICIAL SALE.—So long as sale is unconfirmed, and the property and the sale remains under the power of the court, it has the power to change the terms of the sale.

5. APPELLATE COURT.—Where appellant is not interested in a question raised in the petition as an assignment of error, this court will not consider such question.

Appeal from decrees of circuit court of Clarke county, rendered 9th November, 1880, and 31st May, 1879, respectively, in suits of John Marshall *v.* C. S. Lee and *als.*, and of Hilleary, Wilson & Johnson *v.* Same. The first was a lien creditor's suit. The second was a suit against C. S. Lee and wife on a note made by them to the complainants. They were consolidated and heard together. Miss A. L. Tebbs was one of the creditors whose lien was reported. She and Hilleary, Wilson & Johnson assailed conveyances made by Lee and wife of their one undivided sixth interest in a certain tract of land called "Mansfield," which was devised by Mann R. Page to his daughter, Mrs. Lee, to William R. Page and by him to trustees, as creating a voluntary and fraudulent settlement, upon Mrs. Lee, of their debtors' interest in said real estate. The note made to the complainants H. W. & J., by Lee and wife, which was claimed by them as a charge on her separate estate so created by the settlement, was disallowed as a charge thereon. It amounted, at the date of the decree, to less than $500.

The other facts and proceedings are sufficiently stated in the opinion.

From the said decrees Hilleary, Wilson & Johnson and Miss A. L. Tebbs obtained an appeal to this court.

*McDonald & Moore,* for the appellants.

*S. J. C. Moore & Son* and *M. McCormick,* for the appellees.

ANDERSON, J., delivered the opinion of the court.

This is an appeal from two decrees pronounced by the circuit court of Clarke county in the causes of Marshall *v.* Lee, and Hilleary, Willson and Johnson *v.* Same, &c., which were heard together. The first is a lien creditor's suit, and

the second is a suit brought by the plaintiffs against C. S. Lee and Margaret R., his wife, and others, upon a note executed by C. S. Lee and Mrs. Margaret R. Lee to complainants. The bill charges that a deed conveying certain property to trustees for the separate use of Mrs. Lee, conveyed in part property which belonged to C. S. Lee, and to that extent was made without valuable consideration, and was voluntary, and void as to the creditors of C. S. Lee. And so far as it was not void, claimed that the property was liable as the separate estate of Mrs. Lee, to the payment of the debt due the complainants.

The complainants, by an amended bill, charged that said deed, so far as it conveyed property of C. S. Lee, was made with intent to hinder, delay, and defraud his creditors.

The circuit court by its decree of November, 1878, held that the note due Hilleary, Wilson & Johnson, was not a charge upon the separate property of Mrs. Lee, which is the subject of appellant's third assignment of error, and by the decree of 9th of November, 1880, dismissed complainant's bill, with costs.

On the 13th of November, 1879, Miss A. L. Tebbs filed her petition asking to be made a party plaintiff in this suit, representing that she is a large creditor of C. S. Lee, and that her debt, secured by a deed of trust on tract of land on which C. S. Lee resides, has been regularly audited in the suit of Marshall v. Lee, in which there has been taken an order of sale, and that she is apprehensive that the proceeds of the sale of said tract will not be sufficient to satisfy her said debt. And she prays that she may be made a party plaintiff in the cause of Hilleary, Willson & Johnson v. C. S. Lee and wife and others, and that any residue of her debt not satisfied out of the proceeds aforesaid may be satisfied out of the funds settled upon Mrs. Lee mentioned in said suit.

The court is of opinion that the claim of the appellants,

Hilleary, Willson & Johnson, not being of an amount suffi-
cient to give this court jurisdiction—the same with inter-
est at the date of the final decree, not amounting to $500—
and being a separate and distinct claim from that of Miss
Tebbs, cannot be helped by her uniting with them in the
appeal—as to them the appeal must be dismissed as im-
providently allowed (*Umbarger* v. *Watts*, 25 Gratt. 167;
*Gage* v. *Crockett*, 27 Gratt. 735)—but that Miss Tebbs' right
of appeal is not affected by such dismission, and the court
will now proceed to consider both causes together upon her
appeal; and will consider the assignments of error in their
order.

The first assignment is, that there is error in the order
of the 9th of November, 1880, in not setting aside the post-
nuptial settlement made by C. S. Lee on his wife, and in
dismissing the bill of Hilleary, Willson & Johnson. This
assignment will be considered so far as Miss Tebbs claims
to be aggrieved by the order complained of. The ground
as she alleges in her petition for appeal, in asking to be
made a party plaintiff in said suit, was to have the settle-
ment made by the deed "from William B. Page to McDon-
ald & McCormick, trustees, set aside as being voluntary and
fraudulent."

The funds referred to as settled upon Mrs. Lee were the
proceeds of the sale of her undivided interest of one-sixth
in a tract of about 520 acres of land, which was devised to
her by her father, in which it seems to have been under-
stood and conceded by her that her husband had a life
estate by the curtesy. Her husband, whose indebtedness
then exceeded the value of his property, united with her
in the sale and conveyance by deed of the 23d of March,
1875, to William B. Page, of her said undivided interest in
said tract of land, including his life estate, for the consid-
eration of twenty shares of the Clarke Building Fund As-
sociation, ten shares of the Bank of Berryville, and his

bond for $386, valued together at $3,886, which funds the said Page, pursuant to the agreement and understanding of the parties (for it was all one and the same transaction), cotemporaneously granted and conveyed to McCormick & McDonald, trustees, upon the express trust that they shall strictly apply any moneys they may raise from any of said stocks, whether from dividends of the bank stock, from redemption or sale of either of said stocks, or from the proceeds of said bond, first to the discharge in whole or *pro tanto* of the judgments of the circuit and county courts of Clarke county, which are liens upon the life estate of C. S. Lee in his wife's said land, or to the liquidation and discharge of any other liens, voluntary or otherwise, upon said life estate, arising from the indebtedness of said C. S. Lee; "and any excess of said stock, or of the proceeds of the same, or of the proceeds of the bond, after the discharge of the liens aforesaid, shall be held by the said trustees subject to any appointment which the said Margaret R. may make in writing addressed to the said trustees."

The court is of opinion that this was not a settlement by the husband on the wife. There does not appear to have been any intention of a settlement. The intention was on the part of C. S. Lee to sell his life estate. He was willing to sell it for a price which would be sufficient to satisfy and discharge the debts that encumbered it. He evidently did not think it was worth more. He probably then did not think it was worth that much, as his near neighbors did not think it was, who knew the property well. But he was not willing to sell for less than the debts which were a lien upon it. He had no other means of paying those debts, and his life estate was bound for them anyhow. William B. Page was willing to give the stocks and his bond before mentioned for a complete title. C. S. Lee was willing to sell him his life estate, and join in the deed

with his wife, conveying to him a complete title to her un-
divided share of the tract of land called Mansfield. He
probably at that time did not know the amount of his debts
which were a charge upon his life estate. They were not
audited by the master and reported to the court in the
creditor's suit aforesaid until nearly a year afterwards. But
he was satisfied that his life estate was not worth more
than the amount of debts charged upon it, if as much; and
if not as much, they would still have to be paid out of it,
as he had no other means to pay them, he agreed to unite
in the conveyance on the consideration that the stocks and
the purchaser's bond aforesaid should be put in the hands
of trustees, upon the express trust that they should be first
applied to the payment of his said debts, and that what-
ever balance remained should be held by the trustees sub-
ject to the order of Mrs. Lee in writing for her separate
use. And Mrs. Lee was willing, under the circumstances,
to take for her interest the balance which might remain of
the stocks and the purchaser's bond, and to join in the con-
veyance. Thus the matter was understood and arranged
between them, what part of the consideration received
from the purchaser of the land should go to the husband,
and what part to the wife; and although it was then cer-
tainly known the exact amount which each would receive,
it could and would be rendered certain when the master
audited and reported to the court the debts of C. S. Lee and
the priorities of the liens. It was therefore not a settle-
ment by C. S. Lee on his wife. It was a sale by C. S. Lee
of his life estate, and Mrs. Margaret R. Lee of her fee, sub-
ject as it was to the curtesy of her husband, to William B.
Page, and what he was to receive for his interest, and what
she was to receive for hers, was agreed upon and fixed, and
what Mr. Lee was to receive as the consideration for the
conveyance of his life estate was to be applied to the pay-
ment of his debts which were charged upon it, and what

Mrs. Lee was to receive was the price she agreed to take for her interest in the land, and the whole proceeds of the sale were put in the hands of trustees upon the express trust that they would so dispose of them. What Mrs. Lee was to receive was not by way of voluntary gift from her husband, but it was for her own property, and there is no proof in the cause, or complaint made, that it was not worth it. It was not, therefore, a voluntary gift to her husband without valuable consideration. And the sale made by the husband of his life estate, was for a valuable consideration—the payment of certain debts of his which were a charge upon his life estate—and it was important to the purchaser that this provision of the contract should be strictly carried out. Without it he would not get what he paid for. He was a party to the contract. It was, in fact, a tripartite contract. It cannot be avoided upon the ground that it was a voluntary conveyance without valuable consideration.

It is charged in the amended bill that it is fraudulent—that it was made with intent to hinder, delay and defraud the husband's creditors. The answer of Margaret Lee positively and responsively denies the charge. The court is of opinion that the *onus* was on the plaintiffs to prove the charge, and that they have failed to do it. They have not shown that any part of the proceeds of the sale of C. S. Lee's life estate was settled on Mrs. Lee. The court is of opinion that it was the intention of C. S. Lee to sell, and of William B. Page to purchase, his life estate for the consideration mentioned in the deed, the payment of his debts chargeable on it. There is nothing in the record to show that either of them considered it of more value at the time. But there is much on the face of the instrument, in the provision made to secure the payment of those debts, and in the circumstances of the case, to show that C. S. Lee was under the impression that his said debts might largely exceed the value of his life estate, but still required that

they should be paid first out of the proceeds of the sale; and Mrs. Lee was willing to take the balance, whatever it might be, as the best she could do. It has turned out that the said debts amount to about $1,000. It has not been satisfactorily shown—what it devolved on the plaintiffs to show—that said sum is an adequate price for C. S. Lee's life estate. Mr. Lee was then fifty years old. The proof is that he was not a hale, hearty, strong man, although he might live many years. His chance for life, in the opinion of another witness in 1880, was not the best, but fair. The testimony of Lippitt and Richardson, who lived near the farm and were well acquainted with it, valued the life estate greatly below $1,000. The burden of proof to show the inadequacy of the price was upon the plaintiffs, and we are of opinion that the speculative and uncertain calculation as to the probable continuance of the life of C. S. Lee is insufficient for the purpose in the face of this evidence.

But if it were shown that there was some inadequacy of price, the court is of opinion that in the absence of fraudulent intent, it would furnish no sufficient ground to set aside the sale and conveyance to William B. Page, or the deed by William B. Page to the trustees in execution of that agreement.

The second assignment of error is to the order made in Marshall against Lee, on the 31st of May, 1879, which directs that unless Mrs. Lee, who was the purchaser at the sale made, more than two years before, of the tract of about 165 acres of land owned by her husband and sold for his debts, shall, within fifteen days from the date of the order, comply with terms of the sale requiring the execution of bonds for the deferred payments, she having made the cash payment, the land shall be resold, but that the bonds shall bear date May, 1879, the date of this order, and bear interest from the date of the sale. The error assigned is that the bonds were not required to be dated, as of the sale.

We are of opinion that the sale not having been confirmed, and the property and the sale being under the power of the court, it had the power to make the change in the terms of the sale, as to the date to be given to the bonds, with the assent of the purchaser, and it not appearing that the creditors were aggrieved by it, the bonds being required to bear interest from the day of sale, and it appearing in fact to be for the benefit of the creditors, that the first sale, which was fair and made under favorable circumstances, and to which no objection had been made, should stand, rather than that it should be set aside, and the risk of a new sale incurred, which is represented as the views of some of the creditors represented in this appeal, the court will not reverse the decree on that ground.

The parties now before the court are not interested in the third assignment of error, and it is passed over.

The appellant is not interested in the question raised by the fourth assignment of error, and we do not see how she can be injured or aggrieved by the decision of it by the court below. The effect of the order was not to diminish the amount of the fund for distribution amongst the lien creditors. If there is any error in the said order, it is an error of which Shaul's executor alone could complain. And he does not complain.

The fifth assignment of error affects the claim of G. R. Page, ex'or of William L. Clarke. The claim is, that there should be an additional credit of $400 upon this debt. This court is of opinion that the evidence is not sufficient to support this claim, and that there is no error in the decree on this ground.

Upon the whole the court is of opinion that there is no error in the decree of the circuit court, for which it should be reversed, and that the same must be affirmed.

DECREE AFFIRMED.