## Staunton.

### STRAYER AND WIFE V. LONG AND ALS.

#### SEPTEMBER 22d, 1887.

1. CHANCERY PRACTICE—*Guardian ad litem—Infants—Notice.*—In suits affecting the interests of infant parties, it is not sufficient to notify them by publication of the taking of accounts. Notice must be given to their guardian *ad litem.*

2. IDEM—*Decree of sale—Accounts—Receivers.*—In creditors' suit it is error to decree sale of debtors' lands before ascertaining the amount of the debts, and this cannot be done until sums in receiver's hands, and sums realized by sale under execution of debtors' personalty, have been ascertained and credited.

3. IDEM—*Appeal—Sale after—Purchasers—Receivers.*—Where, after appeal allowed, commissioners sell the lands decreed to be sold (sale never confirmed—decree afterwards annulled), the so-called purchasers take possession, appropriate the ·profits, claim to be treated as receivers and allowed the commissions paid in cash and compensation for expenses and services in managing the lands—

HELD:

They were mere intruders, with no claim to compensation in any way, but are accountable for a fair rental.

4. IDEM—*Trustees—Substitutes.*—Under Code 1873, ch. 174, ⸹ 8, in suit to annul deed of settlement by debtor to trustee for his wife and children, it is the court's duty, upon the trustee's death, to appoint a substitute, though section 9 provides that his personal representative shall execute the trust.

5. IDEM—*Interest—Agreed rate*—Where debtor lawfully agreed to pay interest at the rate of 10 *per centum per annum*, the court will compel the payment, though debtor's lands are placed in receiver's hands at creditor's instance.

6. APPELLATE COURT—*Circuit court—Duty of latter*—Circuit courts are bound to obey the decrees of this court in all cases. Where, on appeal, this court prescribes the order in which properties must be sold when decree for sale is made, the circuit court, in its decree of sale, must conform to that prescription; otherwise its decree will be reversed for such non-conformance.

Appeal from decree of circuit court of Shenandoah county, rendered September 4th, 1885, in the creditors' suit of M. Long and others, complainants, against Joseph B. Strayer and wife and others, defendants. The decree being adverse to Strayer and wife, they obtained an appeal and *supersedeas.* Opinion states the case.

*W. W. Crump* and *H. C. Allen,* for the appellants.

*W. L. Walter* and *Holmes Conrad,* for the appellees.

LACY, J., delivered the opinion of the court.

In February, 1879, the appellee, Long, and others, judgment lien creditors of Joseph B. Strayer, filed their bill in behalf of themselves, and all other lien creditors of said Strayer who should come in and contribute their share of the costs of the suit against said Strayer and his wife, seeking to subject the real estate of the said Strayer to their liens, and to set aside a conveyance made by him to a trustee, of a part of his real estate for the benefit of his said wife and her children. And the said circuit court having rendered two decrees, one on the eleventh day of January, 1881, and the other on the sixth day of April of the same year, by which the said Strayer and wife considered themselves aggrieved, an appeal was taken to this court, and at the September term, 1883, of this court both of said decrees were reversed, and a decree rendered here on the seventeenth day of October, 1883, which was ordered to be and was certified down to the said circuit court of Shenandoah county. The reasons for this decree were stated in writing by Judge Hinton, and filed and preserved with the records of this court, and no further notice will be taken of the said decrees here.

The cause coming on further to be considered in the said

circuit court of Shenandoah county, the said decree of this court of October 17, 1883, having been recorded in the said court in this cause, a reference was had to a commissioner, accounts taken and reported, with the depositions taken in the cause, and the said report of the commissioner having been excepted to by the defendants in that court, the appellants here, the said circuit court of Shenandoah county, on the fourth day of September, 1885, rendered its decree, overruling the exceptions of the defendants—except the fourth, which was substantially sustained—and decreeing the sale of all the lands of the said Strayer. Whereupon the appellants applied for and obtained an appeal from one of the judges of this court.

The first assignment of error here, now, is that the decree of this court, rendered October 17, 1883, prescribing the order of time in which the several tracts of land should be sold, has been disregarded. It was decreed in this court as follows: "The court is of opinion that if the said deed of settlement shall hereafter be held to be invalid, the land thereby conveyed, and known as the 'Strickler Farm,' must, to the extent of said Joseph B. Strayer's interest therein, be subjected to the liens of the judgment creditors before any of the other lands of the defendants can be sold for that purpose." The circuit court of Shenandoah county, in the decree complained of, decreed the sale of all the lands of the defendant in the decree directing the said "Strickler Farm" to be sold, after directing the sale of all the others, thus reversing exactly the order of sale as prescribed by this court in its decree of October 17, 1883. It will not be denied that the circuit court of Shenandoah is bound by the decree of this court, and must obey it, whether the same meet with its approval or not, and entirely without reference to the question whether the reasoning of this court is satisfactory to that court or altogether otherwise; and we reverse the decree of that court for that

cause alone, without again entering upon any argument concerning it. That court being of opinion that it is "now manifest from the papers in this cause that, in the most favorable aspect in which the interest of Joseph B. Strayer and his wife can be regarded, his lands will, in any event, prove far inadequate to satisfy the undisputed lien debts ascertained now to rest upon them, and *that a just regard for the interests of all parties forbids further delay in the sale of the lands,*" etc., can form no justification for the decree which was rendered in direct opposition to the final judgment of this court on that very question; and, the same being in contravention of the opinion of this court, the said court was incompetent to have such an opinion judicially, or to enter such decree. But notwithstanding the fact that the cause will be for this reason reversed and remanded, as the cause must go back to the lower court we will proceed to consider the other assignment of errors, for the guidance of the court in its further progress.

The second assignment of error is as to the action of the court in overruling the second exception of the defendants to the commissioner's report. That is, that no trustee was in existence when the accounts were taken under the decree of the January term, 1885, and no trustee when the decree was rendered—the trustee, Rodes, having died. The circuit court overruled this exception, upon the ground that the cause had been revived against the administrator of said Rodes, trustee, at the January term, 1885, who had, it is contended, all the rights, powers, and duties of the trustee himself. Section 9, chapter 174, V. C., provides that the personal representative of a sole or surviving trustee shall execute the trust, or so much thereof as remained unexecuted at the death of such trustee (whether the trust-subject be real or personal estate), unless the instrument creating the trust otherwise directs, or some other trustee

be appointed for the purpose by a court of chancery having jurisdiction of the case. And the eighth section of the same chapter provides that "in a suit in equity, in which it appears that a trustee has died, although the heirs of such trustee be not parties to the suit, yet if his personal representative and the other persons interested be parties, the court may appoint another trustee in the place of him who died, to act," etc. There are cases where the personal representative of the trustee may, under the authority of the ninth section above cited, execute the trust; but in such a case as this, involving the trusts under this deed of settlement, it was the duty of the court to appoint a trustee under the provisions of the eighth section, *supra,* and we think the court erred in proceeding with the suit to overturn the trust-deed without first appointing some suitable person to act as trustee under this deed, and to place every proper safeguard around the rights of the married woman and her *infant children.*

The next assignment of error is that the court overruled the third exception to the commissioner's report, which was upon the ground that the guardian *ad litem* was not notified of the taking of the accounts. Publication having been substituted by the court in lieu of personal service, the names of the infants being inserted in the publication, the guardian *ad litem* not being named therein, nor otherwise served with notice, the circuit court held the notice sufficient, and that no service on the guardian *ad litem* was necessary. The appointment of guardians *ad litem,* says Mr. Coke, is incident to every court. By the provisions of our law the courts of equity are empowered to appoint guardians *ad litem,* whether the infant has been served with notice or not, and to compel the person so appointed to act. But he is not liable to costs, and is to be allowed all reasonable charges, to be paid by the party at whose motion he was appointed, and to be taxed in the bill of

costs. His duty is to manage the interests of the infant in that suit in which he is appointed. Such guardian *ad litem* should not be appointed until the infant is brought before the court by some of the modes prescribed by law; but when he is appointed in a pending suit, he is required by express statute (section 5, chapter 124, V. C.), in some cases, to be present at the taking of depositions, or that the interrogatories shall be agreed to by him, else the depositions shall not be read against the infant; and in every suit *he must have notice* of the several steps by which the rights and interests of the infant may be affected, as he cannot discharge his duty of protecting the interests of the infant if the proceedings are had without his knowledge, and he is debarred from attending. Under some of the decisions he cannot waive the service of process. *Robbins* v. *Robbins*, 2 Ind. 74. It has been often held in this court that it is error to decree a sale of the infant's real estate without the appointment of a guardian *ad litem;* and the appointment of said guardian *ad litem*, to protect the interests of an infant, would be a vain thing if the subsequent proceedings should be had without notice to him. It follows that the circuit court erred in overruling this exception.

The fifth exception, and the next question to be considered, is as to the proper charges to be made against Allen and Newman, respectively, the purchasers, under the decree appealed from in the first appeal, of the two tracts of land then directed to be sold for the use and occupation of the said lands. After an appeal had been allowed in this court to the decree ordering the sale of these two tracts of land the commissioners appointed by the court proceeded to sell these lands and Allen and Newman became the purchasers, but the sale was never confirmed by the court, and the decree directing the sale of these lands was afterwards annulled by the decree of this court. They,

however, continued to hold possession of these tracts of land and to farm them, taking to themselves the profits therefrom. These persons, having no claim whatever to the possession or use of these lands, were treated by the court as receivers, and allowed, as against the profits of the farms, the commissions paid in cash under this void sale: for fertilizers, seed, labor, fencing; large sums for superintendence and management of the lands—which in one case brought the farm in debt, and in the other left only a small balance of a few dollars for the several years' enjoyment of what appears to be valuable and productive farms. This is plainly erroneous. The court was the vendor, and the court never confirmed the sale. There was no sale. The supposed purchase was a mere offer to buy—a mere bid to the court never accepted—and the purchasers, so-called, had no right whatever to the possession of the lands; and having wrongfully taken and held the same and taken the profits to themselves, they must be held responsible and chargeable with a fair rental for the said lands, and must themselves bear the expenses they incurred in their own enterprise, and upon no just principle can be paid a large salary for attending to their own business. Far less can they be allowed a credit for cash paid by them in commissions to their supposed vendors, which they paid in their own wrong; and the said circuit court erred in overruling this exception.

The sixth exception is as to the failure of the commissioner to settle an account of the transactions of the receivers, Kagey and Miller, for the time they held possession of the lands of the defendant. These settlements should be completed for the full time that the receivers had possession of this real estate, and it was error to decree a sale of defendant's lands to pay debts before this amount had been *fully ascertained and credited on the debts*.

The seventh exception is as to the failure of the com-

missioner to credit the money realized by the levy of an execution upon the personal property of the defendant upon the judgment of Sulen & Payne. It is plainly erroneous to decree a sale of this real estate until the amount of the debts has been ascertained, and this can only be done after all proper payments have been credited.

The next assignment of error is as to the allowance of ten per centum interest on the Long debt. The contract is for ten per centum per annum, which was a legal rate of interest in this State at that time, if expressly contracted for. But it is argued that in this case the court should reduce the rate of interest to six per centum from the time when the lands of the defendant were taken out of his control and put in the hands of a receiver of the court, thus depriving him of the means of paying the debt. But the theory of the law is that he is entitled to have the proceeds of these lands, at their utmost, applied for his benefit to the credit of these debts, and they cannot be said to have been taken from him in any other sense. The defendant is entitled to hold the receivers to a strict accountability for the value of his lands while in their control, and to have the annual value of the same applied to the debts contracted by him; and this will be done. But he is bound by his contract as he made it, the same not appearing to be unlawful, nor otherwise invalid. The courts cannot make another contract for the parties. This question is concluded in this court by the decision in *Cecil and Perry* v. *Hicks*, 29 Gratt. 1, and the circuit court did not err in so deciding.

As to the validity of the settlement upon Mrs. Strayer, the court will not consider that question at this time. Whether it is excessive or not cannot be determined with any degree of accuracy in the present state of the accounts. The errors are so numerous and so considerable in amount that the case will be remanded to the circuit court of

Shenandoah county to retake these accounts in accordance with the views we have expressed, and when this has been done, and the proper credits applied to the debts, the court must determine this question upon a due consideration of the changed face of the accounts.

The court is therefore of opinion to reverse the decree complained of and to remand the cause to the said circuit court of Shenandoah county for further proceedings in accordance with the foregoing views.

DECREE REVERSED.