Moore *et al.*

*v.*

Triplett *et al.*

(*Supreme Court of Appeals of Virginia, Sept. 26, 1895.*)

[23 S. E. Rep. 69.]

### Depositions—Taken in the Absence of Guardian Ad Litem—When Inadmissible.

Where the guardian ad litem had notice of the taking of depositions in an action to cancel a deed wherein an infant is interested, the depositions are not rendered inadmissible by the failure of such guardian to be present when taken, as Code, §§ 2435, 2619, rendering depositions inadmissible in a suit against an infant or insane party, unless taken in the presence of the guardian ad litem or on interrogatories agreed on by him, relate only to suits for the sale of land of persons under disability, and not to suits generally in which infants may be interested.

### Conveyance—Inadequacy of Consideration—Fraud upon Creditors—Case at Bar.

The fact that the consideration paid on property worth $26,000 was $2,872 less than that amount does not show such an inadequacy of consideration as to justify a cancellation of the conveyance as in fraud of the grantor's creditors.

Appeal from circuit court, Shenandoah county; R. H. Turner, Judge.

Action by J. I. Triplett and others against Kate G. Moore and others. Plaintiffs had decree, and defendants appeal. Reversed.

*Southall & Williams,* for appellants.

*Walton & Walton,* for appellees.

RIELY, J., delivered the opinion of the court.

It is claimed by the appellants that the circuit court erred in reading and considering the deposition of Joseph Maphis, taken on February 21, 1888, and the depositions of T. W. Allen, J. B. Hamman, Israel Allen, W. Fitzmoyer, A. Overboltz, and W. H. Hamman, taken on October 10, 1888, all of which depositions were taken by the appellees. The ground of the objection is that the record does not show that the depositions were taken in the presence of the guardian ad litem of the infant parties. It was necessary that the guardian ad litem should have notice of the taking of the depositions, in order that he might represent and protect the interests of the infants, and the record shows that notice was given to him. But it is insisted that this is not sufficient, and that it was illegal for the court to consider the depositions, unless it appeared that they were taken in the presence of the guardian ad litem. Reliance for this petition was had upon sections 2435 and 2619* of the Code. These statutes only refer to suits for the sale of lands of persons under disability and contingent estates, there referred to, and do not apply to suits generally, in which infants may be interested. There is no law, nor rule of practice, which makes it necessary that depositions in ordinary suits should be taken in the presence of the guardian ad litem before they can be read. It is his duty to represent faithfully the interests of the infant for whom he is appointed, and to enable him to do this he must have notice of the steps taken in the cause; but to exclude every deposition not taken in his presence would be a step beyond what the law requires. There is nothing in the opinion of this court in Strayer v. Long, 83 Va. 715, 3 S. E. 372, nor in the opinion of Walker v. Grayson, 86 Va. 337, 10 S. E. 51, which holds otherwise.

*These sections each read as follows: "No depositions shall be read in the suit against any infant or insane party, unless it be taken in the presence of the guardian ad litem or upon interrogatories agreed on by him."

The complainants brought their suit to set aside as fraudulent and void the deed made by Morgan M. Moore to his mother, Amanda M. F. Moore, and also the deed made by her to Robert J. Walker, trustee. The deed from Morgan Moore to his mother expresses on its face that the land and personal property therein described are conveyed in consideration of the sum of $9,000, paid, and for the further consideration of an annuity of $600, due from him to her; also in consideration of her assuming to pay to Israel Allen the amount of two bonds of $5,000 each, bearing date, respectively, May 9, 1882, and July 20, 1882, which were secured by deeds of trust on the land; and for the further and final consideration of certain other debts which she had assumed to pay for him. It is a rule universally recognized, except in a particular class of cases within which this case does not come, that one who alleges fraud must clearly and distinctly prove it. The law never presumes it, but the presumption is always in favor of innocence, and not of guilt. Fraud is not to be assumed on doubtful evidence, but the facts constituting fraud must be clearly and conclusively established. A principal ground on which the deed was assailed as fraudulent was that the consideration expressed was pretended and· fictitious. It is to be taken as true until disproved. Upon the complainants devolved the burden of proving that it was fictitious, and they undertook to do this in several ways. They endeavored to show, among other things, that Mrs. Moore was largely indebted to her son, Morgan, on account of her management of her husband's estate after his death. Samuel Moore, Sr., the husband of Amanda M. F. Moore, and the father of Morgan Moore, died May 27, 1870, possessed of valuable real estate, and of personal property that sold for $2,537. He died heavily in debt for the purchase of certain shares in the Sigler farm, and his widow, who was one of his personal representatives, determined not to make partition of the real estate, but to keep it together, and manage it, until from the receipts from the lands she had paid for the Sigler farm, and any other debts

against the estate. From May, 1870, to May, 1876, a period of six years, she managed the estate, and at the latter date had paid off all the debts. The counsel for the appellees made a statement in their brief, based upon the evidence as viewed from their standpoint, in which, after charging her with the moneys received from the sale of a mill and a small parcel of land, the amount for which the personalty sold, and the estimated value of the crops for the six years, and then crediting her with the debts due by her husband, as they estimate them to have been, and the amount paid for the share in the Sigler land, purchased by her of Lafayette Sigler, they find a balance against her of $25,006. Deducting from this balance one-third of the estimated value of the crops for her dower interest, she is brought in debt to her children in the sum of $13,000, to one-third of which Morgan Moore would be entitled. This statement is not only speculative in great part, but contains a material error in the statement of the debt due on the Sigler farm. Samuel Moore, Sr., agreed to pay $28,000 for the four shares. A cash payment of $1,000 is acknowledged in the deed for one of the shares, and $8,333.33⅓ of the residue of the purchase money was payable on April 1, 1870. As Samuel Moore did not die until nearly two months afterwards, it is assumed in the said statement that this installment was paid before his death. Its payment at maturity is arbitrarily assumed, not only without any evidence upon which to base such assumption, but against the evidence of L. Triplett, Jr., a leading witness for complainants, who deposed that Samuel Moore owed at his death the entire purchase money for the four shares. If Mrs. Moore is credited in the said statement with the amount of this installment, together with interest on the amount of the indebtedness until paid, for which no allowance was made by counsel for appellees in their statement, the balance against her will wholly disappear. In confirmation of this conclusion we may refer to the release given by all of the heirs to Mrs. Moore and her coadministrator, G. G. Funkhouser,

which was filed with the commissioner of accounts for the county court of Shenandoah county, and in which, after referring to the loss of the vouchers of the said personal representatives, they state that they "know that all moneys and proceeds of sale of property which came into the hands of either" of the said personal representatives "were properly applied to the payment of the debts of Samuel Moore, deceased"; that there is "none of the estate of Samuel Moore, deceased, in their hands"; and that they "release and absolve the estate of G. G. Funkhouser, Admr., and A. M. F. Moore, from any and every liability" to them. In 1876, the debts having all been paid, partition was made of the lands between the three children, Mrs. Moffett, who afterwards became Mrs. Henkel, Samuel Moore, Jr., and Morgan Moore, by commissioners appointed by the court. Dower was not assigned to the widow, but she agreed to accept from Mrs. Henkel and Samuel Moore, Jr., each an annuity of $600 in lieu of dower in the lands allotted to them. Morgan Moore, though under age, made verbally the same arrangement with his mother to pay her the like sum of $600 in lieu of her dower in his land, and time and again, after attaining his majority, ratified the agreement. His mother managed for him his part of the land from the time of the partition in 1876 until 1881, when he took charge of it himself. The evidence tends to show that during those years the rents were worth annually $2,000. It is claimed by the counsel for the appellants that she was in debt to him on account of the rents at the time he made to her the conveyance in controversy. Conceding that she received the rents during those years, it by no means follows that she retained them, or applied them to her annuity, and did not pay them over to her son, or in discharge of his debts. The record contains no testimony tending to show that she applied them to the annuity he owed her, either in whole or in part, or that she retained them. He, to whom the rents belonged, acknowledged in his deed that he owed her the annuity. In the face of such acknowledgment, it cannot

be presumed, merely from her receipt of the rents as manager
for her son, that she still owed them, or applied them in pay-
ment of the annuity.    To do so would be to presume the fraud
which the law imposes on the complainants to establish by clear
and satisfactory proof.    To do so would also ignore the fact
of his support during those years, and the further fact that he
was speculating, and of very extravagant habits, squandering
money instead of appreciating its value, of which the record
contains abundant evidence.    It was also attempted to be shown
that she was liable to her son for the money received for the
90 acres of his land which was sold to Joseph Maphis.    It is
proved that the bonds were made payable to her, but it is also
proved that this was done in order that she might apply the
money to the payment of the debts Morgan owed, and keep
him from spending it for other purposes.    And it was also
proved that one of the bonds, or at least a part of one, was
turned over to George W. Lantz, a creditor of Morgan, as a
payment on his debt, and that a good part of the money re-
ceived for the land sold to Maphis was paid by Mrs. Moore to
Mrs. Henkel on account of the lien she held on Morgan's land.
So far as any of the money is traced by the evidence, she is
proved to have applied it in payment of Morgan's debts, the
very purpose for which the bonds of Maphis were turned over
to her.

The foregoing shows the character of the evidence, and the
nature of the argument of counsel for the complainants, to
establish that there was no consideration for the conveyance
from Morgan Moore to his mother, or that the consideration
was inadequate.    Indeed, what has been referred to constitutes
their chief reliance.    It is neither clear nor satisfactory, but
speculative and unreliable, and falls short of the degree of
proof of fraud that is required.    On the other hand, the evi-
dence tends strongly to show that there was adequate consider-
ation for the property conveyed.    It was conceded in the oral
argument that from the evidence $26,000 was a fair valuation

of the land in fee simple, with a clear and unincumbered title.
In the partition made of the lands the sum of $1,334, as of
May 10, 1876, was charged upon the part allotted to Morgan
Moore to be paid to Mrs. Henkel to equalize her share. A
payment had been made on this line, so that on July 11, 1885,
the balance was $1,100. This would reduce the value of the
land to $25,900. Besides this, the contingent right of dower
of the wife of Morgan Moore would further materially affect and
reduce its value. The value of the personal property was not
proved or definitely approximated, but it was claimed in argu-
ment to be between $1,800 and $2,500. Putting it at $1,900,—
the difference between these estimates,—and adding it to the
$24,900, and the total is $26,800. The annuity due from
Morgan Moore to his mother in lieu of her right of dower in
his land from the time of the partition in 1876 to the making
of the deeds in 1885, a period of nine years, amounted, with
interest, to $6,858. There was due on the two bonds to Israel
Allen $10,600. The age of Mrs. Moore is not given, so that the
present value of her annuity in the future cannot be accurately
calculated, but if put at as much as 70 years, the value would
be $3,598. The debts which she has assumed to pay are not
given, and the report of the commissioner only shows one, for
which judgment had been rendered for $729.43. These sums
make up $21,785.43. If to this is added the $9,000 acknowl-
edged in the deed to be paid, we will have $30,785.43, which
is much in excess of the estimated value of the property.
But if the $9,000 was made up of the amount due to Mrs.
Moore for her annuity in the past and her open account for
moneys lent to and paid for Morgan Moore, and the amount
due her on the annuity, to wit, $6,858, is deducted from the
$9,000, there is left $2,142 as the amount due to Mrs. Moore
on open account, which, in her answer, she alleges to be up-
wards of $2,000. Taking this view, and adding $2,142 to the
above sum of $21,785.43, the total consideration is $23,927.43,
which falls short of the estimated value of the property con-

veyed by $2,872.57 ; but this statement includes the personal property at a wholly conjectural value, and omits any deduction for the value of the contingent right of dower of wife of Morgan Moore in the land, and any estimates of the debts, save one only, which she had assumed to pay.   In a case of this kind it is not required, in order to refute the charge of fraud, that the consideration paid for the property should be its exact value.   To set aside a conveyance on this ground, the inadequacy must be gross and palpable. Sutherlin v. March, 75 Va. 223, 229 ; Tebbs v. Lee, 76 Va. 744 ; Kempner v. Churchill, 8 Wall. 362 ; and Wait, Fraud. Conv. §. 232.  Mrs. Moore, from 1876, received regularly every year the sum of $1,200 from Mrs. Henkel and Samuel Moore in lieu of her right of dower in their respective lands.   She is proved to have been an excellent manager, and a woman of very economical habits.   Yet with this comfortable income, she left at her death, in May, 1887, no property whatever beyond a few articles of furniture.   It is shown that her fondness for her wayward son, Morgan, amounted almost to a weakness ; that there was scarcely any limit to her indulgence of him ; and that he was constantly borrowing money from her in various sums, and that she never refused him, if she had it.   It was proved that he was so heavily indebted in 1882, when he borrowed the $10,000 from Israel Allen, that it fell short of paying his debts by upwards of $3,000.

Upon a consideration of all the evidence, both that which has not been commented upon as well as that which has been referred to, we are of opinion that the complainants failed to prove that the conveyance from Morgan Moore to his mother was without any or adequate consideration.   The consideration being taken, then, to be adequate, there is an entire absence of fraud.   There is not the slightest evidence that when Morgan Moore made his deed to his mother he did so upon any agreement, suggestion, or expectation that she would settle the property conveyed on his wife and children.   As evidence of a fraudulent purpose

and corrupt agreement, stress was laid upon the fact that both deeds were made, acknowledged, and admitted to record on the same day, but this, to our minds, tends rather to refute than support the charge of fraud.    If the conveyances had been conceived and executed with a fraudulent intent, the parties would naturally have resorted to devices to conceal it, and, among other devices, would have been careful to keep the deeds as separate and distinct as possible, giving to them different dates, and having them recorded at different times.    But there was no concealment.    It was all done in a straightforward manner. Having purchased the property at a fair value, and in good faith, she had the right to do with it as she pleased.    And having a certain and regular income in the annuity paid to her by her other two children, which was sufficient for her comfortable support, what was more natural, in her anxiety for her spendthrift son and his family, than to secure by a fair purchase the remnant of his patrimony, and settle it upon his wife and children?    On the very next day after the deeds were admitted to record, the complainants brought their suit to set them aside as fraudulent and void.    At the next term of the court (September, 1882), Mrs. Moore and the other defendants answered fully the allegations of the bill, and denied the fraud.    From that time on—for more than two years—until after her death the suit was allowed to sleep.    Not a step was taken to establish the charge of fraud.    By such unreasonable delay on the part of the complainants, and her subsequent death, the appellants were deprived of her testimony, and the light it was in her power to throw upon the matters in controversy.    Such lack of diligence as the complainants have displayed does not commend their cause, under the circumstances, to a court of equity.

There is no error in the refusal of the circuit court to order a trial by jury of the issue as to whether there was usurious interest or not in the loans from Israel Allen to Morgan Moore. The suit of Morgan Moore et al. v. Israel Allen et al., in which the question of usury was raised, was not brought until August

21, 1888. Section 12 of chapter 137 of the Code of 1873, by virtue of which the trial by jury was demanded, was repealed by the Code of 1887, which went into effect on May 1, 1888. There was, therefore, no law, when the said suit was brought, requiring a court of equity to have the question of usury tried by a jury. And without going into a discussion of the evidence upon the question of usury, we are of opinion that the charge that there was usurious interest in the two debts of $5,000 each due to Israel Allen, and secured by deeds of trust, is not sustained. We are therefore of opinion, for the foregoing reasons, that so much of the decrees appealed from as declare that the deed executed by Morgan M. Moore to Amanda M. F. Moore on July 11, 1885, and the deed from the said Amanda M. F. Moore, of the same date, to Robert J. Walker, trustee, are fraudulent and void, and on that ground order the property embraced in the said deeds to be sold for the payments of the debts of Morgan M. Moore, is erroneous, and must be reversed.